# Exhibit 1

**Strictly Confidential**
**October 31, 2019**

Mr. Stephen Voller
ZapGo LTD
Genesis Building, Library Avenue,
Harwell
Oxford, OX11 0SG,
UK

     RE: Nikola Letter of Intent to acquire ZapGo LTD ("ZapGo" or the "Company")

Dear Stephen:

     Thank you for the opportunity to discuss a potential transaction between ZapGo LTD (the "Company") and Nikola Corporation ("Purchaser"). Based upon the preliminary conversations with you, we are pleased to submit this non-binding Letter of Intent ("LOI") to acquire 100% of the share capital of the Company (the "Acquisition") from the shareholders of the Company (the "Sellers").

     The obligations of the parties hereto to consummate the Acquisition are subject to the negotiation and execution of definitive legal documentation, including, without limitation, the Purchase Agreement as defined in paragraph 3 below. Accordingly, this LOI is intended solely as a basis for further discussion and is not intended to be and does not constitute a legally binding agreement; except that the provisions set forth in paragraphs 3, 5, 7, 8, 10, 11, 12, 13, 14 and 15 below (including any exhibits referenced in such paragraphs) and this paragraph shall be binding upon the parties hereto and, only with respect to paragraphs 3, 5, 10, 11, 12, 14 and 15 (including any exhibits referenced in such paragraphs) shall survive the termination hereof. In consideration of the Company agreeing to undertake the development activities set out in paragraph 5, the obligation of Purchaser to fund the Development Costs (as set out in paragraph 5 below) and the Company's obligations in paragraph 5 below, are and will remain binding obligations of the Purchaser and the Company upon execution of this LOI and will until this LOI is terminated.

     Attached to this LOI as <u>Exhibit A</u> is a term sheet (the "Term Sheet") summarizing certain non-binding material terms of the Acquisition.

     1.     **Purchase of Shares**. At the closing (the "Closing"), subject to the negotiation and execution of the Purchase Agreement (as defined herein) and the satisfaction of all conditions precedent contained in the Purchase Agreement, the Purchaser will purchase from the Sellers, and the Sellers will sell to the Purchaser, free and clear of any liens, charges, restrictions or encumbrances thereon, all of the share capital issued by the Company (collectively, the "Shares"). Notwithstanding the foregoing, the Purchaser reserves the right to exclude any assets from the Acquisition based upon its ongoing due diligence reviews (which assets will be transferred out of the Company in a manner to be agreed by the parties).

Nikola Corporation
Letter of Intent
ZapGo LTD
October 31, 2019                                                                                                              2

As part of the completion mechanics, all of the Company's existing Financial Indebtedness will be repaid from the Purchase Price (as defined below) and any security interests discharged in a manner satisfactory to the Purchaser. The Purchaser will not assume any of the Company's existing Financial Indebtedness (if any). Notwithstanding the foregoing, the Purchaser reserves the right to exclude any liabilities from the Acquisition based upon its ongoing due diligence reviews.

For the purpose of this paragraph, "Financial Indebtedness" means debt owed by the Company pursuant to any banking facilities (other than working capital and/or overdraft facilities), promissory or loan notes (whether or not convertible) and any long-term debt owed to any credit institution.

2. **Purchase Price and Terms**. The purchase price for the Shares will be $56,500,000 ("Purchase Price") to be paid with the retirement of Seller's existing senior secured indebtedness in the amount of $6,500,000 and 2,699,784 shares of Purchaser's Series D Preferred Stock valued at $18.52 per share based on a Purchaser's Series D pre-money value of $3,000,000,000.00. Payment of the Purchase Price would be subject to adjustments for working capital and indemnification from the Sellers, as outlined in the Term Sheet. In addition, an adjustment for working capital balances above or below a target level will be due in accordance with the terms of Exhibit A.

3. **Definitive Agreement**. The Purchaser and the Company hereby agree to use reasonable diligence to commence good faith negotiations in order to execute and deliver a definitive purchase agreement (the "Purchase Agreement") to be entered into under English law and jurisdiction. All terms and conditions relating to the Acquisition shall be stated in the Purchase Agreement, including without limitation, warranties, covenants and indemnities that are usual and customary in a transaction of this nature as such may be mutually agreed upon between the parties. Subject to the satisfaction of all conditions precedent contained in the Purchase Agreement, the execution of the Purchase Agreement and the Closing will take place no later than May 17, 2020 or as soon thereafter as practicable.

If the Purchaser is acquired or enters into a material transaction prior to Closing, the Purchase Agreement will automatically complete. In addition, any option grants assumed in any employment agreements which would become affective at the closing of the acquisition will immediately be granted and vest prior to the closing of the transaction.

The Purchaser's obligation to execute, deliver and perform the Purchase Agreement is conditioned upon approval by the Purchaser's governing body. In the event that the Purchaser's governing body declines to approve the Acquisition, or the Purchaser withdraws from the negotiations for any reason other than due to a disclosure by the Company or Sellers which would have a material adverse effect on the Company, its assets or prospects, the Purchaser shall reimburse the Company for its reasonable legal fees incurred to that date related to a potential Aquisition, subject only to receipt of copies of such relevant invoices. All shareholders, members, or holders of any other ownership interest in the Company will execute and deliver the Purchase Agreement, will agree to vote their units or ownership interest in the Company in favor of the Acquisition and will use their best efforts to cause the Acquisition to be completed.

Active:43147592.2

Nikola Corporation
Letter of Intent
ZapGo LTD
October 31, 2019                                                                                                                3

       4.      **Representations and Warranties**. The Agreement will contain warranties customary to transactions of this type, including without limitation, warranties by the Sellers as to (a) the accuracy and completeness of the Company's financial statements for the past three years (including the year ended December 31, 2018); (b) disclosure of all the Seller's contracts, commitments and liabilities, direct or contingent; (c) the physical condition, suitability, ownership and absence of liens, claims and other adverse interests with respect to the Company's assets (d) ownership of the Sellers' equity interests; (e) absence of liabilities with respect to the Company, other than as set forth in a balance sheet (including the notes thereto) dated April 30, 2020 or as otherwise disclosed; (f) disclosure of all material post-balance sheet (adverse change in the condition (financial or otherwise), business, properties or assets of the Company since April 30, 2020; (g) absence of pending or threatened material litigation, investigations or other matters affecting the Acquisition; (h) the Company's compliance with laws and regulations applicable to its business and obtaining all licenses and permits required for its business; and (i) the due incorporation, organization, valid existence, good standing and capitalization of the Company.

       5.      **Development & Analysis**. The Company shall develop a Generation 4 (Gen 4) Carbon-Ion (C-Ion) cell designed to be used in the Nikola hydrogen and charging stations ("Development Product"). The Gen 4 cells will be delivered against the milestones in Exhibit B. The Purchaser agrees to fund up to eight million ($8,000,000) dollars for the development of Gen 4, C-Ion and general overhead as outlined at Exhibit C (the "Development Costs") and will pay these mutually agreed upon development cost as follows:

       (a)      high level monthly estimated Development Costs are set out in accordance with Exhibit C ("Monthly Estimates"), as varied by agreement of both parties;

       (b)      on a bi-monthly basis, the Company will provide Purchaser with a detailed two-week forecast of the Development Costs ("Two-Week Forecast"); Purchaser will pay to the Company a sum equivalent to the Two-Week Forecast in U.S. Dollars in cleared funds on the 1st and 15th of each calendar month;

       (c)      the Company will account for the actual Development Costs for each Two-Week Forecast period (the "Actual Costs") on the 15th and 30th of each calendar month and submit written invoices and/or appropriate documentation to Purchaser;

       (d)      in the event that the Actual Costs exceed any Two-Week Forecast, the margin above the Two-Week Forecast will be deducted from the next bi-monthly payment or, alternatively, in the event that the Actual Costs are lower than the Two-Week Forecast, the margin below the Two-Week Forecast will be available in cleared funds in addition to and at the same time as the next bi-monthly payment (but such payments in total shall not exceed $8,000,000 without Purchaser's express written consent) .

      The Company shall seek approval in writing from Purchaser for any individual expenditures that deviate by more than $25,000 from the Two-Week Forecast amounts. Any Development Costs that exceed the budgeted $8,000,000 will be deducted from the Company's and Seller's Nikola Series D stock allocation, as set forth in Section 2 above, at 3x the price of the

Nikola Corporation
Letter of Intent
ZapGo LTD
October 31, 2019                                                                                                                4

Development Cost overrun (for example, if an additional $1,000,000 is needed to complete the Development Product, the Company's and Seller's Nikola Series D stock allocation will be reduced in total by 161,987 shares [$1,000,000 x 3 divided by $18.52]).

Purchaser shall analyze the Development Product prior to Closing according to milestones in Exhibit B, and if Purchaser determines that the Development Product does not perform to reasonable expectations in its sole and absolute discretion and decides not to consummate the Acquisition, Purchaser shall notify the Company of such determination and the Company shall issue to Purchaser unrestricted stock or other similar ownership interest in the Company of a value equal to the Development Costs paid by Purchaser.

6.  **Conditions Precedent to Closing**. The respective obligations of the parties with respect to the Acquisition shall be subject to satisfaction of conditions: (a) execution of the Purchase Agreement by all parties; (b) the obtaining of all requisite regulatory, administrative, or governmental authorizations and consents, as required; (c) the approval of the Acquisition by each of Purchaser's and the Company's respective Boards of Directors; (d) absence of pending or threatened litigation, investigations or other matters affecting the Company or the Acquisition (which were not disclosed prior to execution of the Purchase Agreement); (e) satisfactory completion by the Purchaser of a due diligence investigation of the Company; (f) confirmation that the representations and warranties of the Sellers are true and accurate in all respects; (g) the Sellers having entered into noncompetition agreements acceptable to the Purchaser; (h) the parties having entered into a shareholders' agreement ("Shareholders Agreement") in a form acceptable to the Purchaser and the Sellers; and (i) the execution of such other ancillary agreements deemed necessary by the parties to consummate the Acquisition.

7.  **Access to Information**. The Company will give the Purchaser and its representatives full access to the properties, documents, contracts, books, records and operations of the Company relating to its business. The Company will furnish the Purchaser with copies of documents and with such other information as the Purchaser may request.

For the avoidance of doubt, Purchaser's due diligence review shall include, among other things but not limited to: (i) site visits and conversations with contract manufacturers and other vendor due diligence; (ii) question and answer opportunities with the Company's senior management; (iii) an examination of the Company's financial statements, tax returns for the previous three years (3) and related work papers; (iv) a detailed review of the Company's projected product costs and profitability; (v) review of management's monthly operating statements; (vi) review of Company's customers for the last five (5) years by name; (vii) review of product return challenges and associated liabilities; (viii) review of management's budget and forecast for 2020, including analysis of all assumptions and projections for budget and forecasted periods; (ix) review of all material contracts; (x) a review of the Company's assets, operations, control procedures, employment matters, labor matters, regulatory compliance, corporate and other organizational documents and litigation.

Purchaser is prepared to commence due diligence promptly after your acceptance of this LOI and will diligently work toward negotiation and execution of mutually acceptable definitive

Nikola Corporation
Letter of Intent
ZapGo LTD
October 31, 2019                                                                                                                                  5

agreement as discussed in more detail in the schedule attached hereto as Exhibit B.

8. **Exclusivity and No Shop Clause**. In recognition of the time, expense and effort to be expended by the Purchaser, the Company agrees, that until the earlier to occur of (i) the date of consummation of the Acquisition; (ii) the date at which Purchaser notifies the Company in writing it does not intend to proceed with the Acquisition, or (iii) a period of 199 days (31 October 2019 to 17 May 2020) from the signing of this LOI, neither the Company nor the Company's directors, officers, employees, agents or representatives, shall, directly or indirectly, (i) market the Company to any other prospective buyer, and (ii) solicit, encourage or entertain proposals from or enter into negotiations with or furnish any non-public information to any other person or entity regarding the possible sale of the Company's business, assets, or ownership interests.

9. **Conduct of Business**. Following execution of the LOI, the Company shall conduct its business in the ordinary course, consistent with the present conduct of its business and previous practices, and will not, without the written consent of Purchaser (a) enter into or perform any transactions with affiliates, or into transactions other than on an arm's length basis, (b) increase any compensation or benefit arrangement for any employee or officer (except for annual increases of less than 5% or those previously approved) (c) pay any dividends, purchase any stock, or make any other distributions to shareholders, other than distributions to shareholders for taxes in the ordinary course, or (d), enter into any agreement to purchase, lease, exchange or otherwise dispose of material assets or stock of the Company and will disclose to Purchaser any unsolicited offers of the same.

10. **Fees and Expenses**. Except as contemplated by paragraph 3 herein, each party shall bear its own expenses in connection with the LOI and the transactions contemplated hereunder regardless of whether the transaction is completed.

11. **Confidentiality**. Each of the parties hereto agrees that it will not use, or permit the use of, any of the information relating to the Company or the Purchaser respectively furnished to each other in connection with this LOI, the Purchase Agreement or the Acquisition ("Confidential Information"), except publicly available or freely usable material as otherwise obtained from another source, in a manner or for a purpose detrimental to the Company or the Purchaser or otherwise than in connection with this agreement, the Purchase Agreement and the transactions contemplated hereby and thereby. None of the parties hereto will, and the Company and its directors, officers, employees, agents and representatives will not, disclose, divulge, provide or make accessible any of the Confidential Information to any person or entity, other than their responsible officers, employees, advisors or attorneys or otherwise as required by law or regulation. The provisions of this paragraph 11 and the following paragraph 12 are in addition to, and will not supersede, any confidentiality or non-disclosure agreement, executed most-recently by the Purchaser and the Company.

12. **Disclosure**. Without the prior written consent of the other party hereto, neither party hereto will, and each party hereto will cause its directors, officers, employees, agents, other representatives and affiliates not to, disclose to any person the fact that discussions or negotiations are taking place concerning the transactions contemplated hereby, the status thereof, or the

Active:43147592.2

Nikola Corporation
Letter of Intent
ZapGo LTD
October 31, 2019  6

existence of this LOI and the terms thereof, unless in the opinion of such party, the disclosure is required to be made under the Securities Act of 1933 or the Securities Exchange Act of 1934, and such disclosure is made after prior consultation with the other party. Neither party will issue any public announcement concerning the transaction without the approval of the other party, except as may be required by law.

   13. **Termination**. Except as otherwise provided herein, termination of negotiations by the Purchaser on the one hand and the Company or Sellers on the other prior to the execution and delivery of the Purchase Agreement will be without liability and no party hereto will be entitled to any form of relief whatsoever, including, without limitation, injunctive relief or damages. Upon the earlier of (a) the mutual written agreement of the parties hereto; (b) the date at which Purchaser notifies the Company in writing it does not intend to proceed with the Acquisition or (c) the failure by the parties hereto to execute and deliver the Purchase Agreement on or prior to May 17, 2020, (or such later date as may be agreed to by the parties in writing), this LOI shall terminate and the parties shall be released from all liabilities and obligations with respect to the subject matter hereof, except as provided in the second paragraph of page 1 of this LOI.

   14. **Governing Law.** This LOI shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Delaware.

   15. **Jurisdiction**. Each party hereto irrevocably submits to the non-exclusive jurisdiction of the state and federal courts sitting in the State of Delaware for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper.  Each party hereto hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by sending by certified mail or overnight courier a copy thereof to such party at the address indicated in the preamble hereto and agrees that such service shall constitute good and sufficient service of process and notice thereof.  Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law.  Each party hereto hereby irrevocably waives any right it may have, and agrees not to request, a jury trial for the adjudication of any dispute hereunder or in connection herewith or arising out of this agreement or any transaction contemplated hereby.

   16. **Counterparts**.  This LOI may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

   If the foregoing correctly sets forth our mutual understanding, please so indicate by signing two copies of this LOI in the spaces provided below and returning one copy to us no later than 5:00 p.m. on October 31, 2019 Mountain Standard Time after which time the proposal contained

Active:43147592.2

Nikola Corporation
Letter of Intent
ZapGo LTD
October 31, 2019                                                                                                          7

herein will expire.


&lt;signature page follows&gt;

Nikola Corporation
Letter of Intent
ZapGo LTD
October 31, 2019

8

                                              Very truly yours,
                                              Nikola Corporation

                                       By _____
                                                      Trevor Milton, CEO

Accepted and agreed as of the date first written above.
ZapGo LTD

By:_____
        Stephen Voller, CEO

Active:43147592.2

DocuSign Envelope ID: 144A9B82-7FBC-4D2B-8488-BE402762A7B6

Nikola Corporation
Letter of Intent
ZapGo LTD
October 31, 2019                                                                                                                9

## Exhibit A

### Confidential Term Sheet for The Proposed Acquisition of ZapGo LTD
### October 31, 2019

Unless otherwise defined herein, each term defined in the accompanying Letter of Intent, when used in this Exhibit A with the initial letter capitalized, shall have the meaning ascribed to it in the Letter of Intent.

| | |
|---|---|
| **Purchaser:** | Nikola Corporation or a newly organized entity or entities formed by Nikola Corporation (collectively, "Purchaser"). |
| **Company:** | ZapGo LTD and its affiliated entities, if any. |
| **Sellers:** | The shareholders of the Company. |
| **To Be Acquired:** | The entire issued and allotted share capital of the Company, or via another purchase structure to acquire the Company to be determined at a later date by mutual consent of Company and Purchaser. |
| **Purchase Consideration:** | $56,500,000 to be paid with the retirement of Seller's existing senior secured indebtedness in the amount of $6,500,000 and $50,000,000 worth of shares (2,699,784 shares) of Purchaser's Series D Preferred Stock with a value of $18.52 per share based on Purchaser's Series D pre-money enterprise value of $3,000,000,000. It is assumed that the business is purchased with the Target Working Capital (as defined herein) in place and the Acquisition occurs on a debt-free, cash-free basis. |
| **Target Working Capital to be Delivered at Closing:** | The Purchase Price assumes a normalized level of working capital to be delivered by the Sellers at closing (the "Target Working Capital"). Such Target Working Capital to be determined by Purchaser and the Sellers within 152 days (period from October 31, 2019 to March 31, 2020) of LOI execution based on 2019 draft completion accounts prepared by the Company. |
| | Prior to Closing, the Company shall prepare a calculation of preliminary working capital as of the Closing. The Purchase Price shall be adjusted up or down dollar-for-dollar based on the deviation of the preliminary working |

Active:43147592.2

Nikola Corporation
Letter of Intent
ZapGo LTD
October 31, 2019                                                                                          10

|  |  |
|---|---|
|  | capital above or below the Target Working Capital; provided however that if the preliminary working capital is within $50,000 above or below the Target Working Capital, no Purchase Price adjustment shall be made. |
|  | Within thirty (30) days after the Closing, the Purchaser will prepare a statement showing the final working capital as of the Closing. If the final working capital is greater than the Target Working Capital, the Purchaser shall pay the Sellers the dollar-for-dollar difference, if the final working Capital is less than the Target Working Capital, the Sellers shall pay the Purchaser the dollar-for-dollar difference from the Indemnity Escrow; provide, however, that if the final working Capital is within $50,000 above or below of the Target Working Capital then no payment shall be made by either party. |
| **Indemnity Escrow and Working Capital Adjustment:** | Indemnification from those Sellers giving warranties will be subject to an overall cap of 25% of Purchase Price represented by 674,946 shares of Purchaser's Series D Preferred Stock, a $100,000 per claim threshold, and a survival period of eighteen (18) months. Such claims would be settled, at the option of such Sellers, by payment of cash or settlement by the conveyance or cancellation of Purchaser stock issued to such Seller or Sellers to the equivalent value. However, in the case of claims based on (i) fundamental representations (e.g., clean ownership and title, due authority) and (ii) fraud, each of which would have a survival period of four (4) years and would be subject to an overall aggregate cap equal to the Purchase Price. |
| **Employment & Confidentiality Agreements:** | In addition, the Purchase Agreement will have standard non-compete and non-solicitation covenants for Stephen Voller, Charles Resnick and Tim Walder. Purchaser and Seller shall mutually determine which Company personnel shall enter into an employment agreement with Purchaser of a duration not less than five (5) years at any such personnel's current salary, along with benefits consistent with Purchaser's then-current policy. |
| **Fees & Expenses:** | Except as set forth in the LOI, each party will be responsible for their own legal fees in connection with the Acquisition, including but not limited to, expenses relating to business due diligence, accounting and systems due diligence, legal counsel. |

Active:43147592.2

Nikola Corporation  
Letter of Intent  
ZapGo LTD  
October 31, 2019                                                                                                        11

## Exhibit B

### Execution Timeline (will be adjusted appropriately if Letter of Intent execution or disclosure of requested information is delayed)

Each term defined in the accompanying Letter of Intent, when used in this Exhibit B with the initial letter capitalized, shall have the meaning ascribed to it in the Letter of Intent.

| Anticipated Date | Development Product (Gen 4) | ZapGo legal process | Nikola legal process |
|---|---|---|---|
| October 21, 2019 | | Sellers opens data room and provides due diligence materials to Purchaser | |
| October 28, 2019 | | | Purchaser provides partial due diligence request list and headline terms for employment contracts for ZapGo employees |
| October 31, 2019 | Development Costs not to exceed $8m and will be paid bi-monthly in advance consistent with Section 5 of the LOI | Execute Letter of Intent with defined exclusivity period and with ZapGo Board approval | Execute Letter of Intent with defined exclusivity period |
| November 1, 2019 | Development Product phase begins (subject to agreement with Panasonic) | | Purchaser begins due diligence |

Active:43147592.2

Nikola Corporation
Letter of Intent
ZapGo LTD
October 31, 2019                                                                                               12

| | | | |
|---|---|---|---|
| February 14, 2020 | Milestone 1 – Trial iteration 10 samples – verified by Purchaser | ZapGo begins process for investor approval to transaction | Subject to Purchaser analysis of the Development Product at Milestone 1, Purchaser provides draft purchase documents, schedules and related employment and non-compete agreements |
| March 31, 2020 | Development Product delivered, 50 samples of Gen 4 | | Sellers deliver the Development Product to Purchaser for Purchaser analysis |
| March 1, 2020 to April 15, 2020 | | Finalize investor & Board approvals | |
| April 15, 2020 to May 17, 2020 | | Parties work together to finalize definitive agreements | Purchaser completes due diligence and parties work together to finalize definitive agreements |
| May 17, 2020 | | Execution of Purchase Agreements and related documents and Closing | Execution of Purchase Agreements and related documents and Closing |

Active:43147592.2

Nikola Corporation
Letter of Intent
ZapGo LTD
October 31, 2019
13

## Exhibit C

## Forecast for Development Costs

| ZapGo Forecast | | 2019 | | | 2020 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Period | | October | November | December | January | February | March | April | May | Project totals |
| Period days | | 31 | 30 | 31 | 31 | 29 | 31 | 30 | 17 | |
| Project cummulative days | | 0 | 30 | 61 | 92 | 121 | 152 | 182 | 199 | |
| | | $000s | $000s | $000s | $000s | $000s | $000s | $000s | $000s | $000s |
| **Accelerated Gen 4 pre-production samples** | | | | | | | | | | |
| R&D overheads | | | 155 | 155 | 155 | 163 | 163 | 163 | 82 | 1,037 |
| R&D collaboration costs | | | 137 | 137 | 137 | 162 | | | | 573 |
| R&D Gen 4 | | | 736 | 736 | 736 | 586 | | | | 2,794 |
| **General overhead** | | | | | | | | | | |
| Staff costs | | | 251 | 251 | 251 | 301 | 301 | 301 | 301 | 1,955 |
| Property costs | | | 42 | 42 | 42 | 83 | 83 | 83 | 42 | 419 |
| Professional Costs | | | 102 | 102 | 102 | 126 | 126 | 126 | 44 | 727 |
| **Contingency** | | | | | | | | | | |
| Other costs | | | 76 | 76 | 76 | 80 | 77 | 77 | 31 | 492 |
| **Total** | | | 1,500 | 1,500 | 1,500 | 1,500 | 750 | 750 | 500 | 8,000 |
| Cummulative | | | 1,500 | 3,000 | 4,500 | 6,000 | 6,750 | 7,500 | 8,000 | |
| Cash requirements - paid in advance | | 8,000 | - | - | - | - | - | - | - | |